Maria V. **MIRANDA,** et al., Plaintiffs,

v.

**AMERICAN AIRLINES,**
et al., Defendants.

**Civ. No. 96–2481(PG).**

United States District Court,
D. Puerto Rico.

Jan. 9, 1998.

Nydia González Ortiz, Yauco, P.R., for Plaintiffs.

Diego A. Ramos, San Juan, P.R., for Defendants.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Pending before the Court is plaintiffs' motion to set aside judgment for excusable neglect. Upon review of the parties' factual and legal contentions, and the applicable law, plaintiffs' motion is **DENIED**.

### Facts

This is an action filed pursuant to 28 U.S.C. § 1332 against defendant American Airlines and the Ports Authority for their alleged negligent maintenance of a staircase, which led to plaintiff Maria V. Miranda's fall from the staircase and the subsequent injuries to her knees and legs. On December 2, 1996, the plaintiffs filed their complaint against the respondents claiming damages in excess of one million dollars.

On January 28, 1997, American served upon the plaintiffs a set of interrogatories and a request for core documents upon each of the plaintiffs through their attorneys. The plaintiffs had the duty to answer those demands by not later than February 28, 1997. Plaintiff Maria Miranda argued that she had partially complied with the requests and explained that she intended to produce the requested records at some unspecified time in the future. On April 8, 1997, pursuant to Local Rule 311.11, American served upon counsel for the plaintiffs a notice demanding responses to the outstanding discovery demands by April 18, 1997 or American would have no recourse but to move the Court for an order to compel. The plaintiffs did not comply.

On April 25, 1997, American and Puertos once again demanded responses to their discovery demands and invited counsel to meet with them on May 12, 1997. The plaintiffs made a halfhearted response. On May 23, 1997, American, for the third time, demanded proper and complete responses to its discovery demands and warned the plaintiffs of a motion to compel unless the issue was resolved at a conference on June 3, 1997. On June 3, 1997, a discovery conference was held in chambers and this Court ordered the plaintiffs to produce all the outstanding records by not later than June 30, 1997.

The plaintiffs, for the fifth time, ignored American's discovery demands and failed to comply with the Court's order compelling disclosure of the core[1] damages records and American moved to dismiss the complaint for lack of prosecution, failure to cooperate in discovery and failure to obey a clear order compelling them to do so by a specific date. The plaintiffs, for the sixth time, ignored American's motion. They did not bother opposing it nor to explain why they were justified in disobeying the Court's order.

---

1. By "core" documents in this case included all medical records from Thorek Hospital and Medical Center, S.G. Elias, M.D., Bone & Joint Center, Nestor E. ManJarres, M.D., Advocate Health Care, Ravenswood Center for Health and Rehabilitation and Jerome T. Militante, M.D., who are the facilities and doctors that allegedly treated the plaintiff after her fall. Moreover, the "core" documents also included the disclosure information required by Fed.R.Civ.Proc. 26(a)(2)(B) about the plaintiffs' experts. In other words, the key evidence without which the plaintiff will not be able to prove her allegations. Yet, twenty-two months after the alleged accident, that evidence was unavailable to defendants. Such delays are inexcusable under the modern notice pleading practice, where cooperation during discovery is essential for the controversies to be resolved speedily, economically and fairly.

During the discovery conference held on June 3, 1997, the Court scheduled a second discovery conference for August 7, 1997. The plaintiffs failed to appear at the conference. They also failed to timely excuse themselves for their nonappearance. The Court entered an order directing American to file a second motion to dismiss for lack of prosecution. That order was notified to the plaintiffs. Yet, the plaintiffs failed to timely move for reconsideration of the judge's order, excuse their actions or oppose the second motion to dismiss filed by American.

This Court, in the exercise of its inherent powers to keep its docket clear, dismissed this civil action for want of prosecution and for failure to comply with its reasonable orders. *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Asociacion de Empleados v. Rodriguez Morales*, 538 F.2d 915 (1st Cir.1976); *Corchado v. P.R. Marine Management, Inc.*, 665 F.2d 410 (1st Cir.1981), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The present motion to set aside the judgment ensued.

### *Analysis*

Although plaintiffs fail to cite the specific procedural rule upon which they seek to vacate the judgment, we will consider their motion pursuant to Fed.R.Civ.P. 60(b). Such rule reads, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or *excusable neglect* ... (Emphasis ours)

The First Circuit has recently expounded on the "excusable neglect" element of Fed. R.Civ.P. 60(b)(2). In *Pratt v. Philbrook*, 109 F.3d 18, 19 (1st Cir.1997), the First Circuit noted:

> As to the requirement that the neglect be "excusable," the [Supreme] Court established a balancing test which requires an equitable determination "taking account of all relevant circumstances surrounding the party's omission." [*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d

74 (1993)] at 395, 113 S.Ct. at 1498. Such factors were found to include "the danger of prejudice to [an adverse party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

The facts of the present case do not justify relief under Rule 60(b). The factors enumerated by the Supreme Court weigh heavily against the plaintiff. As noted by the First Circuit in *de la Torre v. Continental Ins. Co.*, 15 F.3d 12, 14–15 (1st Cir.1994), "motions brought under Rule 60(b) are committed to the district court's sound discretion ... the trial court's exercise of discretion must be colored by a recognition that, because Rule 60(b) is a vehicle for "extraordinary relief," motions invoking the rule should be granted 'only under exceptional circumstances.' *Lepore v. Vidockler*, 792 F.2d 272, 274 (1st Cir.1986)."

Plaintiffs state in their motion that plaintiffs' counsel failed to attend the status conference scheduled by this court on August 7, 1997 due to her involvement in a car accident the previous day. Plaintiffs also allege that co-counsel Rafael Elvira Caballero was unable to comply with the various discovery requests due to a series of family tragedies in which several members of his family became seriously ill and passed away.

Notwithstanding the unfortunate incidents surrounding the personal lives of counsel Elvira Caballero and Gonzalez, the court finds that the "exceptional circumstances" threshold required to set aside a judgment under Fed.R.Civ.P. 60(b) has not been met. The Court in *de la Torre* also rejected a similar claim where plaintiff's claim was dismissed due to his attorney's personal problems, stating:

> "[plaintiff's] most touted claim—that his attorney was preoccupied with other matters—has been tried before, and regularly has been found wanting. See, e.g. *Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7 (1st Cir.1990); *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir. 1981), *cert. denied*, 456 U.S. 979, 102 S.Ct.

2249, 72 L.Ed.2d 856 (1982). As we wrote on a comparable occasion: 'Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences.' *Pinero Schroeder v. FNMA,* 574 F.2d 1117, 1118 (1st Cir.1978)."

15 F.3d at 15.

"All the relevant circumstance surrounding [the plaintiff's] omission" to timely produce the core medical records and her experts' disclosure reports demonstrate that the length of the delay was unreasonable. The plaintiffs failed to disclose their core records for more than ten months, despite repeated requests from the respondents and an order from the court compelling them to do so by a specified date.

This district court has also faced similar claims to the present one before us. In *U.S. v. Fraya,* 170 F.R.D. 346 (D.Puerto Rico 1997), plaintiff failed to timely oppose a motion for summary judgment, and the court granted defendant's unopposed motion. Afterwards plaintiff moved to set aside the judgment pursuant to Fed.R.Civ.P. 60(b)(2), claiming excusable neglect. The court denied the motion, emphasizing the need to preserve judicial resources:

> [p]laintiff's failure to oppose the motion for summary judgment, or to request an extension of time, has affected this Court's orderly administration of justice. This Court studied the motion for summary judgment without the benefits or arguments in opposition, examined the record, conducted legal research and wrote a seven page opinion and order disposing of the motion. Obviously, plaintiff believes the Court's determination of the motion will be different if it is allowed to file its opposition, otherwise the present motion for relief from judgment would be futile. Therefore, granting of plaintiff's motion would require the Court to engage in this process a second time, in order to evaluate plaintiff's arguments. Clearly, such a waste of judicial resources has an effect on the orderly administration of justice.

170 F.R.D. at 350.

We face a similar scenario in the present case. Due to plaintiffs' delay, defendant American filed not one, but two motions to dismiss for lack of prosecution, pursuant to Fed.R.Civ.P. 41(b). This Court, in the exercise of its inherent powers to keep its docket clear, dismissed this civil action for want of prosecution and for failure to comply with its reasonable orders. *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The Court considered the motions and dismissed plaintiff's complaint on September 4, 1997, pursuant to a four-page opinion and order, which, like in the *Fraya* case, required a substantial amount of research into the legal and factual contentions of the case. Given the expenditure of judicial resources to dismiss the case, and plaintiffs' unpersuasive reasons for their delay, a reopening of the case at this stage would affect the orderly administration of justice. *See Smith v. Stone,* 308 F.2d 15, 18 (9th Cir.1962) (explaining that chaos would result if parties could decide for themselves "when they will file those papers required in a lawsuit"; also suggesting the need for "some obedience to the rules of court; and some respect [for] the convenience and rights of other counsel, litigants, and the court itself.")

Finally, plaintiffs' counsel may argue that their negligence should not be attributed to the plaintiffs, given the merits of their claim. However, the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 has unequivocally rejected this argument:

> In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), we held that a client may be made to suffer the consequences of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." Id., at 633, 82 S.Ct. at 1390 ... To the contrary, the Court wrote:

Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of which can be charged upon the attorney.' Id., at 633–634, 82 S.Ct. at 1390–91, (quoting *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1880)).

This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel.

507 U.S. at 397, 113 S.Ct. at 1499.

In conclusion, the court finds that here was no justifiable "excuse" for the delay in procuring the requested documentation. Indeed, all the rules of pleading, discovery and disclosure point in the opposite direction. The plaintiffs had an affirmative duty to have their core records before they filed their complaint, otherwise they misrepresented to the Court and the defendants that they had the evidence in support of their allegations. Fed.R.Civ.Proc. 11(b)(3). This is not a three-week delay as in *Pratt* but a deliberate forty-week course of action designed to derail the right of the respondents to know what they were up against in order to timely and cost-effectively prepare to meet and challenge that evidence.

Pursuant to the above mentioned discussion, plaintiffs' motion to set aside judgment for "excusable neglect" is **DENIED.**

**IT IS SO ORDERED.**