# United States Court of Appeals

## For the First Circuit

No. 00-1847

FAUSTINA DÁVILA-ÁLVAREZ; RAMÓN FERNÁNDEZ-RAMÍREZ;
ROSA ÁLVAREZ-OQUENDO; RAFAEL HERNÁNDEZ,

Plaintiffs, Appellants,

v.

ESCUELA DE MEDICINA UNIVERSIDAD CENTRAL DEL CARIBE;
HOSPITAL UNIVERSITARIO DR. RAMÓN RUIZ ARNAU (HOSPITAL REGIONAL
DE BAYAMÓN); ESTADO LIBRE ASOCIADO DE PUERTO RICO; MUNICIPIO DE
BAYAMÓN; DEPARTAMENTO DE SALUD ESTATAL; DR. EDMÉE SOLTERO,
FIRST PHYSICIAN; DR. RAMÓN MONGE, SECOND PHYSICIAN,

Defendants, Appellees,

v.

SURGICAL GROUP ADMINISTRATION,

Third-Party Defendant,

UNITED STATES OF AMERICA,

Co-Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Selya, Circuit Judge.

Eugene F. Hestres, with whom Bird Bird & Hestres, were on brief, for appellants.

Oscar González-Badillo, with whom González Badillo, López Feliciano & De Jesús Martínez, were on brief, for appellee Escuela de Medicina Universidad Central del Caribe.

Leticia Casalduc-Rabell, Assistant Solicitor General, with whom Gustavo A. Gelpí, Solicitor General, and Rosa N. Russe-García, Deputy Solicitor General, were on brief, for appellee The Commonwealth of Puerto Rico.

Fidel A. Sevillano-del Río, Assistant U.S. Attorney, with whom Guillermo Gil, United States Attorney, and Lisa E. Bhatia-Gautier, Assistant U.S. Attorney, were on brief, for appellee United States of America.

---

August 6, 2001

---

**TORRUELLA, Circuit Judge.** Plaintiffs-appellants[1] Faustina Dávila-Alvarez, Ramón Fernández, Rosa Alvarez-Oquendo and Rafael Fernández filed the tort action underlying this appeal in the Puerto Rico courts on November 7, 1995. It was removed to the federal district court for the District of Puerto Rico on November 25, 1997. On April 12, 1998, plaintiffs' counsel, José Antonio Méndez Rodríguez (José Méndez), died suddenly and unexpectedly. His brother and law partner, Roberto Méndez Rodríguez (Roberto Méndez), assumed responsibility for the case. After receiving no response to discovery requests filed as early as February 1998, defendants moved for dismissal for lack of prosecution. The district court granted this motion and dismissed with prejudice on December 14, 1998. Plaintiffs, represented by new counsel, sought relief from judgment under Federal Rules of Civil Procedure 60(b)(1) and 60(b)(6). The district court denied this request. Dávila Alvarez v. Escuela de Medicina Universidad Central del Caribe, Civ. No. 97-2793 (JAF) (D.P.R. Mar. 28, 2000). Finding that the district court did not abuse its discretion in refusing to grant relief, we affirm.

### BACKGROUND

---

[1] Throughout the opinion we refer to plaintiffs-appellants Dávila-Alvarez, et. al., as either "plaintiffs" or "appellants" depending on the stage of the litigation at issue.

We present the procedural history of this litigation in some detail, as it supports the district court's refusal to grant relief from judgment.

On November 7, 1995, plaintiffs filed this medical malpractice claim in Bayamón Superior Court, a Puerto Rico court of first instance. José Méndez, of the law firm of Méndez & Méndez, was counsel of record. The firm's address was listed with the court as Tropical #30, Muñoz Rivera, Guaynabo, Puerto Rico. On July 23, 1996, José Méndez filed an Informative Motion in the Puerto Rico court noting changes to the firm's street and mailing addresses.[2] On November 25, 1997, co-defendant[3] Dr. Susana Schwartz removed the case to federal district court pursuant to 28 U.S.C. § 1442(a)(1), 28 U.S.C. § 2679(d), and 42 U.S.C. § 233.[4] The notice of removal was served to José Méndez at his former address, Tropical #30.

Although the case had been removed to federal court and dismissed from the Puerto Rico courts, José Méndez filed a second

---

[2] The new street address was 1848 Glasgow Avenue, College Park, Rio Piedras, Puerto Rico. The new mailing address was P.O. Box 70150, Suite 128, San Juan, Puerto Rico.

[3] There is some dispute as to whether Dr. Schwartz should be considered a co-defendant or a third-party defendant; for purposes of this appeal, the distinction is irrelevant.

[4] Schwartz did so as an officer of the United States Department of Health and Human Services who had obtained a certification from the United States Attorney that she was acting within the scope of her federal employment at the time of the conduct complained of.

Informative Motion in Bayamón Superior Court on January 13, 1998, noting another change in the mailing address of Méndez & Méndez, to P.O. Box 270128, San Juan, Puerto Rico. Counsel for defendants were also served with notice of the new address. On January 23, 1998, the Bayamón Superior Court issued a Notice of Judgment to the correct Box 270128 address, informing José Méndez that judgment had issued, and the case dismissed from the Bayamón court, as of December 11, 1997. The December 11, 1997 dismissal order clearly stated that the case was dismissed under 28 U.S.C. § 1446, the federal removal statute. As appellants concede that José Méndez received the Notice of Judgment from the Bayamón Superior Court on January 28, 1998, he was on notice as of that date that the case had been dismissed from the Puerto Rico courts because it had been removed to federal district court.

Also on January 23, 1998, the United States was substituted as defendant for Dr. Schwartz pursuant to 28 U.S.C. § 2679. Notice of this substitution was sent by first-class mail to José Méndez at his former address, Tropical #30. On February 2, 1998, the United States submitted a responsive pleading, which was again sent to the incorrect Tropical #30 address. On February 3 and February 4, 1998, the United States sent interrogatories and filed a request for the production of

documents, again to the wrong address.  There is no evidence, for the most part, that these documents ever arrived at Méndez & Méndez.[5]

Because José Méndez was not admitted to practice before the federal court, at some point in January or February of 1998, he contacted attorney Enrique Mendoza about the possibility of referring the case.  The record shows only that Mendoza solicited research on a relevant legal issue from a third attorney.[6]  On February 23, 1998, Mendoza faxed the results of this research to José Méndez.  There is no evidence in the record that Mendoza accepted the referral, and no motion was filed informing the district court of a change of counsel. José Méndez also did not inform the district court at this point that he was not admitted to the federal bar.

On April 12, 1998, José Méndez died suddenly and unexpectedly.  Upon his death, Roberto Méndez assumed responsibility for all of his current cases.  Roberto Méndez was also not admitted to practice before the federal court.

---

[5] There is strong circumstantial evidence that José Méndez received at least the notice informing him of the United States' substitution as a defendant in a timely fashion.  His correspondence with Enrique Mendoza in early 1998 presented a fact scenario based on such a substitution. See infra at n.10.

[6] After removing the case, the United States had claimed that the suit was barred for failure to pursue administrative remedies required under the Federal Tort Claims Act (FTCA).  Mendoza had asked attorney Lisa Drucker Shub to research whether, in a case where a plaintiff was unaware of defendant's federal employment status prior to removal, the statute of limitations acted to bar an administrative claim.

On June 8, 1998, the district court issued a Scheduling Order providing that the pleadings be finalized by July 17, 1998, that discovery be completed by October 8, 1998, and that any dispositive motion be filed prior to November 9, 1998. A pretrial conference was scheduled for December 8, 1998. It is unclear from the record whether the Order was sent to Méndez & Méndez at the Tropical #30 address or at the correct Box 270128 address.[7]

On October 21, 1998, the United States filed a motion requesting dismissal for want of prosecution, noting that its interrogatories and requests for document production, propounded in February of 1998, had gone unanswered, and that the time for discovery set forth in the Scheduling Order had elapsed. This motion was later joined by co-defendant Escuela de Medicina. Both motions were noticed to the now-deceased José Méndez at his Tropical #30 address. Counsel for Escuela de Medicina also submitted an affidavit stating that he had left more than a dozen phone messages for Roberto Méndez (both upon the June receipt of the Scheduling Order and in the days prior to the December pre-trial conference) that had gone unreturned. On December 8, 1998, the motion for dismissal was granted. Judgment was entered as of December 14, 1998.

---

[7] A copy of the civil docket included in the appendices indicates that, as of July 11, 2000, the district court had the Tropical #30 address on file for José Méndez and the P.O. Box 270128 on file for both the law firm Méndez & Méndez and for Roberto Méndez.

Between José Méndez's death on April 12, 1998 and December 3, 1998, Roberto Méndez took no action regarding this case. On December 3, 1998, he forwarded a "cross-claimant complaint" to Mendoza. The same day, Mendoza responded that he "really [had] no interest in participating in this case." On December 15, 1998, a day after the district court had entered judgment, Roberto Méndez asked the court for a thirty day extension in order to find new representation for plaintiffs. In his request, Méndez claimed that until receiving Mendoza's December 3 fax disclaiming any responsibility for the litigation, it had been his understanding that Mendoza had assumed representation prior to José Méndez's death.

New counsel for plaintiffs sought relief from judgment on this basis in a Rule 60(b) motion filed January 19, 1999. The district court denied the motion in an Opinion and Order dated March 28, 2000. In particular, the court noted that: (i) Roberto Méndez had inexplicably failed to notify the district court of the death of José Méndez; (ii) instead of making the incorrect assumption that Enrique Mendoza had assumed responsibility for the case, Roberto Méndez "should have assured himself of this fact"; (iii) the multiple messages left by defendants with the secretary at Méndez & Méndez should have alerted Roberto Méndez to the imminent expiration of the time for discovery; (iv) although the Rule 60(b) petition focused on the incorrect address used by defendants (and perhaps the court), at no point did appellants'

counsel affirmatively state that Méndez & Méndez had failed to receive the relevant motions and notices at the firm's new address; and (v) José Méndez should have filed a change of address form with the federal court after receiving notice of removal. A subsequent request for reconsideration was denied on May 25, 2000. This appeal followed.

## DISCUSSION

Federal Rule of Civil Procedure 60(b)(1) allows the court to relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." As motions brought under Rule 60(b) are "committed to the court's sound discretion," we review here only to determine if the district court abused its discretion in refusing to grant appellants' motion. Torre v. Continental Ins. Co., 15 F.3d 12, 14-15 (1st Cir. 1994). Although many courts have indicated that Rule 60(b) motions should be granted liberally,[8] this Circuit has taken a harsher tack. "Because Rule 60(b) is a vehicle for 'extraordinary relief,' motions invoking the rule should be granted 'only under exceptional circumstances.'" Id. (quoting Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986)). The rule must be applied so as to "recognize the desirability of deciding disputes on their merits," while also considering "the importance of finality as applied to court

---

[8] See, e.g., Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1132 (11th Cir. 1986); Blois v. Friday, 612 F.3d 938, 940 (5th Cir. 1980); Radack v. Norwegian Am. Line Agency, Inc., 318 F.2d 538, 542 (2d Cir. 1963); 11 Wright, Miller & Kane, Federal Practice & Procedure, § 2852, at 231 (1995).

judgments." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19-20 (1st Cir. 1992). Although these authorities must now be read with the gloss supplied by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993), they still remain instructive.[9]

Appellants argue that José Méndez's death, Roberto Méndez's belief that the case had been transferred to Enrique Mendoza, and the fact that many of the motions and notices were sent to the incorrect address make their failure to prosecute "excusable neglect." Our evaluation of what constitutes excusable neglect is an equitable determination, taking into account the entire facts and circumstances surrounding the party's omission, including factors such as the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant acted in good faith. Id. at 395. After considering the facts at issue here, we conclude that the neglect exhibited -- both by José Méndez before his death and by Roberto Méndez afterwards -- could fairly be termed inexcusable, and therefore that the district court did not abuse its discretion in denying the Rule 60(b) motion. See Ojeda-Toro v. Rivera-Méndez, 835 F.2d 25, 30 (1st

---

[9] Although Pioneer defined "excusable neglect" in the context of Bankruptcy Rule 9006(b)(1), the case expressly indicated that the Bankruptcy Rule definition paralleled that of Federal Rule of Civil Procedure 60(b)(1). Pioneer, 507 U.S. at 393.

Cir. 1988) (changes in counsel do not relieve litigant from liability for previous counsel's inexcusable neglect).

First, before his death, José Méndez inexcusably failed to communicate with the federal district court, or keep the court appraised of the status of the case. He had, since at least January 28, 1998, been on notice that the case had been removed from the Puerto Rico courts to the federal district court. At no point after that date did Méndez inform the court that he was not admitted to federal practice. Although he was aware that his second change of address, to Box 270128, had been filed with the Bayamón court after that court had dismissed the case, he failed to inform the federal court of his new address. José Méndez also failed to respond to interrogatories and discovery requests sent in February of 1998 (although it is possible that he never received these requests, or did not receive them in a timely fashion, due to the incorrect address used by defendants).

In short, between the time he received notice of the removal of this case in January 1998 and his death in April 1998, José Méndez did virtually nothing to indicate his active prosecution of the case, other than contact Mendoza about the possibility of referral. An attorney has a duty of diligence to inquire about the status of a case. Pryor v. United States Postal Serv., 769 F.2d 281, 287 (5th Cir. 1985). Moreover, it is an attorney's responsibility to alert the court as to

-11-

scheduling conflicts, and to explain absences or failures to appear in a timely fashion. Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 608 (7th Cir. 1986). The failure to do so need not be excused under Rule 60(b)(1). Id.; cf. Torre, 15 F.3d at 15 (litigant's failure to take simple step of alerting court to ongoing negotiations and request postponement of imminent deadlines was inexcusable neglect).

Appellants make little or no attempt to explain the neglect on the part of José Méndez, other than noting that he was not notified of the removal to federal district court until approximately two months after it was filed, and that defendants sent post-removal notices to the wrong address. These two facts do not automatically excuse his inexplicable refusal to conduct ordinary communication with the federal court. Certainly, the correspondence between José Méndez and Enrique Mendoza, dated February 23, 1998, makes it evident that José Méndez was by February fully aware that the case had been removed to federal court, and that he had received at least the January 23, 1998 notice (originally sent to the incorrect address) that the United States had substituted as a party.[10]

Second, Roberto Méndez's incorrect "assumption" that Enrique Mendoza had assumed responsibility for the representation was

[10] Drucker Shub's memorandum, attached to Mendoza's fax, posits a factual scenario "where a plaintiff files his or her claim in state court only later to have it removed to federal court, and the United States is substituted as party defendant." Méndez had apparently been aware of these relevant facts and briefed Mendoza on them.

-12-

inexcusable negligence.  We sympathize with the fact that José Méndez's death was an undoubtedly disruptive event at Méndez & Méndez as well a difficult personal loss for Roberto Méndez.  However, a lawyer's duty of diligence transcends both upheaval at work and personal tragedy. See Pioneer, 507 U.S. at 398 ("In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."); Miranda v. Am. Airlines, 176 F.R.D. 438, 440-41 (D.P.R. 1998) (personal problems of counsel do not constitute excusable neglect). Again, an attorney has an ongoing responsibility to inquire into the status of a case.  Pryor, 769 F.2d at 287.  Roberto Méndez was not relieved of this responsibility because the case came to him after his brother's untimely death; if anything, his lack of familiarity with the litigation indicated a greater duty to ensure no deadlines were missed. Finally, having examined the record, we note that Méndez's claimed assumption was not a particularly reasonable one: the fact that Mendoza had relayed a memorandum of law to José Méndez suggests that Méndez & Méndez still bore some responsibility for the litigation; the case file remained at the firm; there was no documentation of a change in counsel; and there was no record that José Méndez had informed the district court of any change in representation.

Appellants' reliance on the incorrect address used by defendants (and perhaps by the district court) is unavailing for

several reasons.  First, as we explained above, José Méndez's failure to communicate with the district court or alert defendants that they were using the incorrect address is at least partly to blame for defendants' continued use of Tropical #30.  Second, appellants do not challenge the representation that defendants had made over a dozen phone calls to Roberto Méndez's office regarding the failure to respond to discovery.  Méndez admitted that he returned only one phone call because it was difficult for him to return phone calls during business hours.  Third, as the district court noted, Dávila Alvarez, Civ. No. 97-2793 (JAF), at 5-6, appellants' assertion that Méndez & Méndez did not receive notices in a timely manner (if at all) is not entirely credible.  The record supports the inference that José Méndez received at least the United States' motion to substitute as a defendant.  Furthermore, at no point has any lawyer associated with Méndez & Méndez stated in an affidavit that the firm never received the relevant documents.  Although appellants claim, truthfully, that there is no evidence in the record that the documents were received, if any such evidence existed, it would be in the care of Méndez & Méndez.

Even if Méndez & Méndez never received many of the relevant motions or notices from either defendants or the district court, we think the facts in this case support the district court's holding.  First, the record compels the conclusion that José Méndez was on notice of the removal of the case to federal court by January 28, 1998.

-14-

Second, once so informed, the confusion as to the correct firm address did not relieve either Méndez brother of his responsibility to inform the district court of the correct address and the fact that he was not admitted to the federal bar. Upon his brother's death, Roberto Méndez had a duty to make appropriate inquiries as to the status of the case, either by ensuring that replacement representation was in place or by finding such representation. And at the very least, Roberto Méndez should have returned the phone calls of opposing counsel. In short, José Méndez failed to undertake ordinary matters of diligent representation and Roberto Méndez ignored the case for almost eight months based on an incorrect and unreasonable assumption; such overt neglect is hardly excusable even if a lawyer is preoccupied with other matters. Torre, 15 F.3d at 15; Piñero Schroeder v. Fed. Nat'l Mortgage Ass'n, 574 F.2d 1117, 1118 (1st Cir. 1978) (attorneys must organize their work so as to meet the time requirements of the matters they are handling).

The other equitable factors do not point in appellants' favor. This is not a case where a litigant missed deadlines by hours or days. Cf. Denman v. Shubow, 413 F.2d 258, 259 (1st Cir. 1969) (counsel overslept and missed trial, but acted promptly to remedy the situation). Roberto Méndez missed every discovery deadline and ignored the existence of a pre-trial conference. Furthermore, almost eight months passed between José Méndez's death and Roberto Méndez's attempts

-15-

to remedy the situation.  Finally, Roberto Méndez's failure to perform simple acts of courtesy such as returning opposing counsel's phone calls in a timely fashion calls his good faith seriously into question.

Appellants make a final plea that to dismiss the case based on counsel's inexcusable conduct would work an unjust penalty on the litigants.  The Supreme Court has clearly disavowed such an argument:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1879)); see also Pioneer, 507 U.S. at 396 (citing Link).

Appellants also seek relief under Rule 60(b)(6), which allows a court to grant relief for "any other reason [so] justifying." Rules 60(b)(1) and 60(b)(6) are mutually exclusive, however, meaning that appellants are not entitled to relief under (b)(6) for claims of excusable neglect. Pioneer, 507 U.S. at 393; Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988). Moreover, to justify relief under Rule 60(b)(6), "a party must show

'extraordinary circumstances' suggesting that the party is faultless in the delay." Pioneer, 507 U.S. at 393; Ackerman v. United States, 340 U.S. 193, 197-200 (1950); Klapprott v. United States, 335 U.S. 601, 613-14 (1949). As we have explained at length, both José Méndez and Roberto Méndez were far from faultless in their conduct.

Appellants end with a last-ditch jurisdictional argument. In their reply brief, they admit that they failed to fulfill the jurisdictional prerequisite of pursuing administrative remedies prior to filing a claim under the FTCA. They argue that this failure robbed the district court of subject matter jurisdiction to enter judgment, and that we should direct the court to void the judgment and remand to the Puerto Rico courts. Given that this issue was not raised before the district court, and briefed only marginally here, we are loath to address it at any length. We confine ourselves to two observations. First, a failure to comply with the exhaustion requirement would not affect the district court's jurisdiction over the action as a whole (and to the extent that it might have furnished an argument for remand, that argument was waived by plaintiffs' failure to make a timely motion to that effect). Second, the exhaustion requirement is, in all events, intended for the government's protection, and, like most other exhaustion requirements, can be waived by the intended beneficiary. Since it is the plaintiffs, not the federal defendant, who attempt to invoke exhaustion here, we conclude that the waiver doctrine applies

-17-

and that there was no jurisdictional impediment to the entry of judgment below.

**Affirmed.**