# United States Court of Appeals
## For the First Circuit

No. 13-1301

RAMIRO RIVERA-VELÁZQUEZ ET AL.,

Plaintiffs, Appellants,

v.

THE HARTFORD STEAM BOILER INSPECTION
AND INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Sonia B. Alfaro de la Vega, with whom Sonia B. Alfaro de la Vega Law Offices was on brief, for appellants.
Pedro J. Torres-Díaz, with whom Zahira D. Díaz-Vázquez and Jackson Lewis LLP were on brief, for appellee.

April 16, 2014

**SELYA, Circuit Judge.** Attorneys represent clients. A familiar incident of this relationship is that an attorney's actions within the scope of her representation normally bind her clients. A corollary of this proposition is the sad fact — but the fact nonetheless — that the sins of the attorney are sometimes visited upon the client. This is such a case.

The facts are easily assembled. In March of 2010, plaintiff-appellant Ramiro Rivera-Velázquez, then 58 years old, applied for a job as a boiler inspector with defendant-appellee Hartford Steam Boiler Inspection and Insurance Company (the Company). On May 18, the Company extended a written offer of employment, which the appellant accepted. Before he started on the job, however, the Company rescinded the offer.

Distressed by this turn of events, the appellant sought legal recourse: he sued the Company in a Puerto Rico court.[1] His complaint alleged, inter alia, that rescission of the employment offer was a by-product of age discrimination and, thus, violated Puerto Rico law. See P.R. Laws Ann. tit. 29, § 146 (Law 100). The Company, seizing upon the existence of both diversity of citizenship and the requisite amount in controversy, removed the

_____

[1] The appellant's wife (Sandra Robles) and the couple's conjugal partnership are additional plaintiffs. Because their claims are wholly derivative, we refer throughout to Rivera-Velázquez as if he were the sole plaintiff and appellant. Our decision is, of course, binding on all parties.

case to the federal district court.  See 28 U.S.C. §§ 1332(a)(1), 1441(a).

Over the next year, the appellant's attorneys blundered time and again.  For one thing, no fewer than three of the Company's motions were deemed unopposed due to the appellant's failure to respond.  For another thing, the appellant's attorneys were thrice chastised by the district court and threatened with sanctions for failure to comply with court orders and/or discovery requests.  On yet another occasion, the court imposed a monetary sanction for the inclusion, in an amended complaint, of claims that the appellant had previously promised to drop.

This sorry series of sophomoric stumbles sets the stage for what happened next.  On September 4, 2012, the Company filed its portion of a previously ordered joint pretrial submission.  The appellant failed to furnish his portion of the joint submission within the time allotted.  The district court responded to this default by issuing a stern minute order.  Using red font for emphasis, the court denounced the appellant's "foot-dragging litigation strategy" and warned that "[t]he next sanction imposed . . . for failure to obey a Court order shall be the dismissal of [the appellant's] complaint."  The court then gave the appellant one week to show cause why his case should not be dismissed.

The appellant made no discernible effort to set matters straight but, instead, ignored the show-cause order.  He neither

-3-

proffered his overdue portion of the joint submission nor attempted to explain his repeated failures to comply with court orders and deadlines.  True to its word, the district court proceeded to dismiss the case with prejudice.  The appellant did not appeal this order.  He did, however, eventually file a motion pursuant to Federal Rule of Civil Procedure 60(b).

This motion beseeched the court to set aside the judgment.  It explained that one of the appellant's attorneys had been ill for several months; that this illness had caused her to neglect the case; and that this illness-induced neglect had led to the repeated failure to comply with court orders and deadlines.

In a carefully considered opinion, the district court denied the appellant's Rule 60(b) motion.  See Rivera-Velázquez v. Hartford Steam Boiler Inspection & Ins. Co., No. 11-1763, 2013 WL 210268, at *5 (D.P.R. Jan. 17, 2013).  This timely appeal followed.

Our inquiry is guided by the abecedarian principle "that relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly."  Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).  Thus, a party who seeks relief under the rule must establish, at the very least, "that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or

defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted."  Id.

It is a common-sense proposition that "the district court is best positioned to examine these criteria."  Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 38 (1st Cir. 2013). Consequently, we review the grant or denial of a Rule 60(b) motion only for abuse of discretion.  See id.

Rule 60(b) offers six independent routes to relief.  See Fed. R. Civ. P. 60(b)(1)-(6).  The motion filed in the court below did not clearly identify which of these routes might lead to relief in this case.  The district court concluded (appropriately, we think) that only clauses (1) and (6) might fit.  See Rivera-Velázquez, 2013 WL 210268, at *3.  The appellant does not challenge this conclusion on appeal.  We proceed accordingly.

Clause (1) of Rule 60(b) authorizes the district court to grant relief from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect."  Clause (6) is a catch-all, which authorizes relief for "any other reason" — that is, any reason not encompassed within the previous five clauses — that may justify relief.

The court below correctly wrote off any possibility of relief under Rule 60(b)(6).  It is a "bedrock principle that clause (6) may not be used as a vehicle for circumventing clauses (1) through (5)."  Cotto v. United States, 993 F.2d 274, 278 (1st Cir.

1993).  In other words, Rule 60(b)(6) and Rule 60(b)(1) "are mutually exclusive."  de la Torre v. Cont'l Ins. Co., 15 F.3d 12, 15 n.5 (1st Cir. 1994).  Where, as here, a party's asserted basis for relief falls squarely within the compass of Rule 60(b)(1), Rule 60(b)(6) is not available.  See Cotto, 993 F.2d at 278.

This brings us to the appellant's claim under Rule 60(b)(1).  The claim, as framed, implicates the rule's "excusable neglect" component.  Deciding what constitutes excusable neglect is a case-specific exercise, which requires "an equitable determination, taking into account the entire facts and circumstances surrounding the party's omission."  Dávila-Álvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 64 (1st Cir. 2001).  The pertinent facts and circumstances typically include such things as "the danger of prejudice to the non-movant, the length of the delay, the reason for the delay, and whether the movant acted in good faith."  Id. (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)).  Nevertheless, these factors are not entitled to equal weight. "Within the constellation of relevant factors, the most important is the reason for the particular oversight."  Nansamba, 727 F.3d at 39.

The court below acknowledged that a few circumstances tilted in favor of granting the motion.  See Rivera-Velázquez, 2013 WL 210268, at *3.  In that regard, it cited the lack of any serious

-6-

prejudice to the Company should the case be reinstated, the general policy in favor of disposing of cases on the merits, and the absence of any evidence of bad faith on the appellant's part. See id. Despite these ameliorative factors, however, the court concluded that "the totality of the circumstances weigh[ed] strongly against granting relief." Id.

In reaching this conclusion, the court supportably found that the appellant had remained silent for months in the face of several court orders of which he had been "duly notified," including an order that "specifically warned that further inaction would entail dismissal." Id. (emphasis omitted). This silence was inexcusable, the court reasoned, because the attorney's illness (which the court accepted as real, notwithstanding the lack of any documentation) neither justified nor explained the utter lack of communication. See id. at *3-4 & n.3. To cinch matters, the appellant had two attorneys of record, one of whom had not professed illness at all. The court concluded that "[a]t the very minimum, [the appellant's] counsel should have informed the Court and opposing counsel of their situation," which they did not do. Id. at *4. In the court's view, the sheer weight of these accumulated failures tipped the decisional scales against the appellant.

The appellant launches a three-pronged attack on the district court's reasoning. We consider each prong separately.

-7-

The appellant's first line of attack, which is cast in terms of the district court's use of precedents, leads nowhere. This line of attack calumnizes the district court for concluding, based on inappropriate case law,[2] that "illness standing alone is not sufficient to justify relief" under Rule 60(b)(1). Id.

The appellant's argument rests upon an artificially cramped reading of the district court's rationale. Fairly read, the court reasoned that an attorney's illness does not constitute a per se justification for Rule 60(b) relief. See id. Such an approach is both reasonable and consistent with precedent. While an attorney's illness may constitute an extraordinary circumstance warranting relief under Rule 60(b)(1), see, e.g., Gravatt v. Paul Revere Life Ins. Co., 101 F. App'x 194, 195-96 (9th Cir. 2004), that is not always the case. Everything depends on context: a party seeking relief must persuade the court not only that his attorney was ill but also that the illness prevented the party from taking reasonable steps to prosecute the case or to inform the court of an inability to do so. See, e.g., Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 527-28 (1st Cir. 2002). In the case at hand, nothing about the attorney's illness suggests a complete inability to communicate with the

_____

[2] See, e.g., Lender v. Unum Life Ins. Co., 519 F. Supp. 2d 1217 (M.D. Fla. 2007); Carcello v. TJX Cos., 192 F.R.D. 61 (D. Conn. 2000); Miranda v. Am. Airlines, 176 F.R.D. 438 (D.P.R. 1998).

court[3] and, in any event, another attorney had entered an appearance in the case.

The decision in Cruz v. Municipality of Dorado, 780 F. Supp. 2d 157 (D.P.R. 2011), loudly bruited by the appellant, is not to the contrary. There, the district court stated in dictum that when "an attorney's mishandling of a movant's case stems from the attorney's mental illness, extraordinary circumstances justifying relief under Rule 60(b)(6) may exist." Id. at 160 (emphasis supplied) (internal quotation marks omitted). This statement in no way undermines the reasoning of the court below.

The appellant's second sortie is an attempt to impugn the district court's balancing of the equities. This sortie is hopeless. In denying Rule 60(b)(1) relief, the district court identified the relevant factors, weighed them with care, and reached a defensible conclusion. There is no principled way that we can second-guess a reasoned appraisal of the equities which, like this one, falls well within the ambit of a trial court's discretion.

The last front on which the appellant attacks is composed of a loosely knit collection of criticisms. Deconstructing this list, we conclude that none of these criticisms makes a dent in the district court's determination.

---

[3] The record reflects that the ailing attorney retained the ability to communicate. One example of this is her filing of a motion to compel discovery, discussed infra.

To begin, the appellant complains that he is blameless and should not be made to suffer for his counsel's failings. We are not without some measure of sympathy for a client whose lawyer lets him down. But in litigation matters, lawyers act for their clients; and this case is not the first (nor will it be the last) in which the failings of an attorney are visited upon her client. After all, it is settled beyond hope of contradiction that "the neglect of an attorney acting within the scope of his or her authority is attributable to the client." Nansamba, 727 F.3d at 38; accord Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962); United States v. Proceeds of Sale of 3,888 Pounds Atl. Sea Scallops, 857 F.2d 46, 49 (1st Cir. 1988) (collecting cases).

The appellant's next criticism is directed at the district court's factfinding. Specifically, he contends that the court erred in recalling that he had been sanctioned more than once. But this contention is woven out of whole cloth; the district court made no such statement. Rather, the court wrote that "on several occasions . . . the Court had to resort to monetary sanctions (or at least the threat of the same) to obtain [the appellant's] compliance." Rivera-Velázquez, 2013 WL 210268, at *3 (emphasis supplied). This declaration is firmly supported by the record.

The appellant's final criticism is a red herring. He takes the district court to task for failing to resolve his motion

-10-

to compel discovery prior to dismissing the case. However, the court's failure to rule on the discovery motion had no bearing on the order of dismissal. We explain briefly.

During the course of the litigation, the appellant moved to compel outstanding discovery. One month later, the Company filed a motion for partial summary judgment. Both of these motions were pending, unadjudicated, when the district court dismissed the case. The appellant now argues that the court's failure to compel discovery rendered him defenseless vis-à-vis the summary judgment motion.

But the summary judgment motion was not what led to the appellant's present predicament. The crucial fact is that the district court never reached the merits of that motion. Rather, that motion was rendered moot by the appellant's persistent pattern of noncompliance, capped by his failure to respond to the show-cause order, which prompted the court's dismissal of the case. There is simply no meaningful connection between the unadjudicated motion to compel and the order of dismissal.

We have said before, and today reaffirm, that "a party's 'first obligation is to make every effort to comply with [a] court's order. The second is to seek consent if compliance is, in fact, impossible. And the third is to seek court approval for noncompliance based on a truly valid reason.'" Cintrón-Lorenzo, 312 F.3d at 527 (quoting Damiani v. R.I. Hosp., 704 F.2d 12, 17

(1st Cir. 1983)).  Given the appellant's failure to comply with these obligations, the district court's refusal to set aside the order of dismissal was not an abuse of discretion.

In circumstances such as these, litigants would do well to remember what Woody Allen famously said: "Eighty percent of success is showing up."  We need go no further.

**Affirmed**.