# United States Court of Appeals
## For the First Circuit

No. 01-2127

ELIE N. KARAK ET AL.,

Plaintiffs, Appellants,

v.

BURSAW OIL CORP. ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes and Stahl, Senior Circuit Judges.

Robert E. Weiner, with whom Jeffrey A. Gorlick was on brief,
for appellants.
Raymond S. Ewer, with whom Tennant & Ewer, P.C. was on brief,
for appellees.

May 2, 2002

**SELYA**, <u>Circuit Judge</u>.  The district court in this case entered a controversial (and arguably incorrect) judgment.  <u>See</u> <u>Karak</u> v. <u>Bursaw Oil Corp.</u>, 147 F. Supp. 2d 9 (D. Mass. 2001).  The defendant eschewed an appeal.  Later, he moved for relief from the judgment on grounds of newly discovered evidence, Fed. R. Civ. P. 60(b)(2), and misrepresentation, Fed. R. Civ. P. 60(b)(3).  The district court denied the motion.  Finding that ruling free from any abuse of discretion, we affirm.

<u>I.</u>

**Background**

The facts that give rise to the underlying litigation are chronicled in the district court's original opinion, <u>see</u> <u>Karak</u>, 147 F. Supp. 2d at 10-11, and it would be pleonastic to repeat them here.  For present purposes, it suffices to say that, at the times relevant hereto, defendant-appellee Bursaw Oil Corp. (a wholesaler and distributor of motor fuel and allied products), through a subsidiary, owned a prime service station in Newton, Massachusetts.  Beginning in 1989, plaintiff-appellant Elie N. Karak leased this station and sold, inter alia, gasoline supplied by Bursaw.[1]  The parties' relationship was bounded by several agreements, revised and renewed periodically, which covered both the lease of the real

---

[1]There are two plaintiffs here (Karak and a corporation that he controls) and two defendants (Bursaw and its parent company). For ease in reference, we treat the case as if Karak and Bursaw were the sole parties in interest.

-2-

estate and the supply of motor fuel. The last lease renewal expired on June 30, 2000. Karak nonetheless remained on the premises as a tenant at will, and Bursaw continued to supply the station with motor fuel.

On or about February 20, 2001, Karak learned from Bursaw's general manager, Andrew Slifka, that Bursaw planned to sell the station to a third party. With that objective in mind, Bursaw served notice on March 28, 2001, directing Karak to vacate the premises within thirty days. Karak did not go quietly; as the thirty-day period wound down, he brought suit against Bursaw in the federal district court. His suit premised federal jurisdiction on the existence of a federal question, see 28 U.S.C. § 1331, charging Bursaw with having violated the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801-2841.

Concerned about possession of the premises and his ability to keep his business afloat, Karak immediately moved for injunctive relief. The district court treated his motion as a motion for a temporary restraining order and denied it on April 30, 2001. Two days later, Karak filed an amended complaint and a renewed request for preliminary injunctive relief. Bursaw responded by filing a motion to dismiss and an opposition to the prayer for injunctive relief. As part of its response, Bursaw attached affidavits subscribed by Slifka and Edward Davis (Bursaw's operations manager).

The district court held a hearing on May 10 in respect to Karak's motion for a preliminary injunction. The court then took the matter under advisement, directing the parties to supplement the record. Pursuant to this directive, Karak swore out and served an affidavit, and Bursaw filed four affidavits of company officials (including supplementary declarations from Slifka and Davis).

On May 30, 2001, the district court denied Karak's motion for injunctive relief and dismissed the action for want of federal subject matter jurisdiction. Karak, 147 F. Supp. 2d at 15. The court's decision rested on two determinations: (1) that the idiosyncratic relationship between the parties did not fall within the scope of the PMPA, and (2) that it should not exercise supplemental jurisdiction over Karak's pendent state-law claims. Id. at 15-16.

Karak abjured an appeal. Instead, he filed a strikingly similar suit in a Massachusetts state court. That court too denied Karak's pleas for injunctive relief. Karak then abandoned his state court action and returned to the federal court. This time, he filed what he termed a "motion to reconsider" (in reality, a motion for relief from judgment).[2] The motion invoked Fed. R. Civ.

---

[2]Karak filed this motion on June 27, 2001. As final judgment had entered in the district court on May 31, 2001, the appeal period was still open. See Fed. R. App. P. 4(a)(1)(A). Despite this window of opportunity, Karak again eschewed a direct appeal.

At about this same time, Karak stipulated to the entry of judgment in yet a third case — an eviction proceeding that Bursaw

-4-

P. 60(b)(2)-(3) and incorporated affidavits from Karak's attorney, Richard P. Blaustein, and from a former Bursaw employee, Edward Yaeger. For eleven years, Yaeger had supervised the Karak-Bursaw relationship, and he had great familiarity both with that relationship and with Bursaw's corporate hierarchy. Yaeger claimed, inter alia, that Davis had misrepresented the structure of the company, and that both Davis and Slifka had distorted the nature of Bursaw's dealings with Karak. Karak asserted that this affidavit constituted new, previously undiscovered evidence supporting his position, and that it proved the falsity of Bursaw's representations to the district court.

Bursaw strenuously opposed this motion. More importantly, the district court found it wanting and summarily denied it. This appeal followed.

## II.

## Analysis

"In our adversary system of justice, each litigant remains under an abiding duty to take the legal steps that are necessary to protect his or her own interests." Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993). Given this duty, the failure to take a timely appeal has serious consequences. While a motion for relief from judgment can be filed under certain

had brought in a state district court. Under the terms of the stipulation, Karak agreed to vacate the service station premises no later than July 17, 2001.

circumstances, an appeal from the denial of such a motion will not expose the merits of the underlying judgment to appellate scrutiny. See id.; Ojeda-Toro v. Rivera-Mendez, 853 F.2d 25, 28-29 (1st Cir. 1988); see also Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 2 (1st Cir. 1989) (explaining that the appeal from a denial of a Rule 60(b) motion "does not automatically produce a Lazarus-like effect; it cannot resurrect appellants' expired right to contest the merits of the underlying judgment, nor bring the judgment itself before us for review"). In short, an appeal from the denial of a Rule 60(b) motion is not a surrogate for a seasonable appeal of the underlying judgment.

In view of this paradigm, the merits of the district court's original order are not now in issue. To the contrary, the only justiciable question on this appeal involves the propriety of the lower court's denial of Karak's Rule 60(b) motion. Our inquiry into that question proceeds on the understanding that relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19-20 (1st Cir. 1992); Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986). Thus, a party who seeks recourse under Rule 60(b) must persuade the trial court, at a bare minimum, that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside,

he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted. Teamsters, 953 F.2d at 20-21.

On appeal from a denial of a Rule 60(b) motion, the movant faces a further hurdle. The district court typically has an intimate, first-hand knowledge of the case, and, thus, is best positioned to determine whether the justification proffered in support of a Rule 60(b) motion should serve to override the opposing party's rights and the law's institutional interest in finality. Consequently, we defer broadly to the district court's informed discretion in granting or denying relief from judgment, and we review its ruling solely for abuse of that discretion. Claremont Flock Corp. v. Alm, 281 F.3d 297, 299 (1st Cir. 2002); Teamsters, 953 F.2d at 19.

## A.

## Rule 60(b)(2)

Against this backdrop, we turn first to Karak's attempt to invoke Rule 60(b)(2). That rule provides in pertinent part that the trial court may relieve a party from a final judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered [within ten days of the date of the judgment.]" On this record, we cannot disturb either the district

court's assessment of these criteria or its decision to deny relief.

Although Karak touts the Yaeger affidavit as newly discovered evidence, he wholly fails to explain why this evidence could not have been found, well before the entry of judgment, in the exercise of even minimal diligence. The inference of availability seems compelling. Yaeger — although retired from his position at Bursaw — lived in nearby Lynn, Massachusetts. Karak had dealt with him for many years and knew him intimately. On the face of things, the delay in contacting Yaeger appears to doom Karak's current quest. See, e.g., Washington v. Patlis, 916 F.2d 1036, 1038 (5th Cir. 1990) (affirming trial court's denial of Rule 60(b)(2) motion when movant knew of her "newly discovered" witness at the time she filed her complaint, but did not attempt to present that witness until after entry of judgment).

Of course, appearances can be deceiving. Cf. Aesop, The Wolf in Sheep's Clothing (circa 550 B.C.). But a party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings. See Lepore, 792 F.2d at 274. Karak did not carry this burden: he himself eschewed any attempt to explain the delay in adducing Yaeger's version of the facts, and the Yaeger affidavit provided nothing suggesting that Yaeger was unavailable during the

weeks leading up to the entry of judgment. Indeed, the only effort that Karak made to persuade the district court that Yaeger's evidence was beyond his reach was to file an affidavit from his then-counsel (Blaustein).

The Blaustein affidavit is scarcely worth the paper on which it is typed. Other than parroting the language of Rule 60(b)(2),[3] Blaustein stated only that he did not know about Yaeger until June 23, 2001. That statement, even if true, is beside the point. The relevant standard is not whether a plaintiff told his attorney about a particular witness, but, rather, whether someone on the plaintiff's side of the case (be it the plaintiff or his attorney) knew of the witness. See Parrilla-Lopez v. United States, 841 F.2d 16, 19-20 (1st Cir. 1988). Taking the record as a whole, Karak not only must have known of the witness (Yaeger) but also must have appreciated his likely significance. Thus, Karak has failed to undermine the logical inference that he had ample time and opportunity to secure and present the Yaeger affidavit prior to the initial entry of judgment.

Karak endeavors to blunt the force of this reasoning by bemoaning that the case moved at lightning speed, thus depriving

---

[3]We disregard the chanting of this mantra. Although a court, for purposes of a Rule 60(b) motion, sometimes may assume the truth of fact-specific statements proffered by the movant, it need not credit "bald assertions, unsubstantiated conclusions, periphrastic circumlocutions, or hyperbolic rodomontade." Teamsters, 953 F.2d at 18.

-9-

him of a fair chance to marshal his proof.  This is little more than a post hoc rationalization.  After all, it was Karak who dictated the pace of the proceedings by pressing vigorously for preliminary injunctive relief (which he termed "emergency" injunctive relief).  Moreover, when the district court requested supplementary materials in connection with the motion to dismiss, Karak could have sought time for discovery or for further investigation.  Cf. Fed. R. Civ. P. 56(f).  He elected not to do so.  Having decided to proceed full throttle, Karak hardly can be heard to complain that the district court obliged him by moving expeditiously.

To sum up, Karak failed to show that, had he exercised due diligence, Yaeger's affidavit would not have been available earlier.  Given this failing, the district court did not abuse its wide discretion in denying the motion for relief from judgment insofar as that motion implicated Rule 60(b)(2).  See Lepore, 792 F.2d at 274 ("An unexcused failure to produce the relevant evidence before the entry of judgment is sufficient grounds for denial of a 60(b) motion.").

## B.

## Rule 60(b)(3)

The second prong of Karak's argument suggests that his motion for relief from judgment should have been granted under the aegis of Rule 60(b)(3).  That rule authorizes the district court to

absolve a party from a final judgment upon a showing that the adverse party has committed "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct . . . ." There are two prerequisites to obtaining redress under this rule. First, the movant must demonstrate misconduct — such as fraud or misrepresentation — by clear and convincing evidence. Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988). Second, the movant must "show that the misconduct foreclosed full and fair preparation or presentation of [his] case." Id.

Karak's theory is that the Yaeger affidavit proves that Slifka's and Davis's affidavits contained material misstatements, and that those misstatements evince misconduct on Bursaw's part. This theory is far from watertight. For one thing, Karak overstates the degree to which the Yaeger affidavit contradicts the Slifka and Davis affidavits.[4] For another thing, Karak himself knew most of the pertinent information contained in the Yaeger affidavit (e.g., information concerning the division of responsibilities between Karak and Bursaw during their working relationship). Finally, Yaeger's affidavit, even when read through rose-colored glasses, merely establishes a conflict in the

_____

[4]To cite but one glaring example, Karak contrasts Yaeger's testimony that Bursaw had two divisions dealing with gasoline sales to the public with Davis's testimony that Bursaw maintained three types of "relationships" with its affiliated service stations. Although Karak makes much of this "misrepresentation," we see no necessary inconsistency in these descriptions.

-11-

evidence; it does not clearly and convincingly show that Slifka and Davis, at Bursaw's instance, intentionally misrepresented pertinent facts. The former showing, without the latter, is not enough. <u>See</u> <u>Geo. P. Reintjes Co.</u> v. <u>Riley Stoker Corp.</u>, 71 F.3d 44, 49 (1st Cir. 1995) (holding that a showing of perjury, without more, is insufficient to entitle a party to relief from judgment under Rule 60(b)(3)).

In all events, we need not probe too deeply whether Karak made an adequate showing of misconduct. Even assuming that he did, any misstatements that may have occurred did not inhibit him from fully and fairly preparing his case. We explain briefly.

To meet the second requirement for application of Rule 60(b)(3), the asserted misconduct "must <u>substantially</u> have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed [to judgment]." <u>Anderson</u>, 862 F.2d at 924 (emphasis in original). The burden is on the movant to make this showing. But the Blaustein affidavit contains no claim that any such interference occurred, and Karak nowhere persuasively explains what interference transpired.

The absence of such an explanation is fatal, as the circumstances of the case, unexplained, do not support an inference of substantial interference. After all, Karak had at his beck and call the complete panoply of pretrial discovery devices, including deposition notices and demands for document production. He also

-12-

had access to Yaeger, had he chosen to take advantage of that opportunity in a timely fashion. See supra Part II(A). Karak availed himself of none of these measures. Had he done so, common sense suggests that he easily could have discovered any misstatements and laid bare the facts prior to the entry of judgment.

This is not a case like Anderson, in which a defendant allegedly concealed evidence during pretrial discovery. 862 F.2d at 922-23. Bursaw made no bones about the fact that Slifka and Davis were its key witnesses, and did not in any way obstruct Karak's ability to depose them or to inspect its corporate records. When a party is capable of fully and fairly preparing and presenting his case notwithstanding the adverse party's arguable misconduct, the trial court is free to deny relief under Rule 60(b)(3). See Diaz v. Methodist Hosp., 46 F.3d 492, 497 (5th Cir. 1995). So is it here: while one can debate the extent to which Yaeger's version of the facts differs from Slifka's and Davis's, and which of those versions is more credible, one cannot plausibly contend, on this record, that Karak's pursuit of the truth was hampered by anything except his own reluctance to undertake an assiduous investigation (including pretrial discovery).

That ends the matter. Rule 60(b)(3) is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect. In re

M/V Peacock, 809 F.2d 1403, 1405 (9th Cir. 1987); Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978).  In light of this design, the district court did not abuse its discretion in refusing to set aside the instant judgment under Rule 60(b)(3).

## III.

## Conclusion

It is trite, but true, that "[c]ourts, like the Deity, are most frequently moved to help those who help themselves." Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 989 (1st Cir. 1988).  This is such an instance:  Karak neglected to prepare his case in a diligent fashion and compounded that omission by failing to appeal from the adverse judgment.  On this record, there is no principled way that we can extricate him from his self-dug hole.

We need go no further.  For the reasons explicated above, we uphold the district court's denial of Karak's Rule 60(b) motion. We take no view of the correctness of the underlying judgment, however, as that is beyond our proper purview.

**Affirmed**.

-14-