# United States Court of Appeals
## For the First Circuit

No. 13-1266

JANAT NANSAMBA,

Plaintiff, Appellant,

v.

NORTH SHORE MEDICAL CENTER, INC. ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Godfrey K. Zziwa, with whom Alanna G. Cline, Law Office of
Alanna G. Cline, and Law Office of Godfrey K. Zziwa were on brief,
for appellant.
Eugene J. Sullivan III, with whom Nicole Forbes and Holtz &
Reed, LLP were on brief, for appellees.

August 12, 2013

**SELYA, <u>Circuit Judge</u>.** When litigation goes awry, lawyers sometimes scramble to find a scapegoat. So it is here: having conspicuously failed to protect the record, the plaintiff's lawyers attempt to shift the blame to their opposing counsel. Concluding, as we do, that this diversionary tactic lacks force, we affirm the district court's denial of the plaintiff's motion for relief from judgment.

## I. BACKGROUND

The facts that gave rise to the underlying litigation are chronicled in the opinion below, <u>see</u> <u>Nansamba</u> v. <u>N. Shore Med. Ctr., Inc.</u>, No. 11-11459, 2012 WL 1856950, at *1-2 (D. Mass. May 21, 2012), and there is no need to rehearse them here. We offer instead a brief sketch of the genesis and travel of the case and supplement that sketch with a more detailed discussion of the events upon which the issues before us rest.

In 2002, defendant-appellee North Shore Medical Center, Inc. hired plaintiff-appellant Janat Nansamba as a technical nursing assistant. While so employed, the plaintiff developed hemorrhoids. During the early morning hours of May 7, 2010, she felt ill and left her overnight shift. Later that day, she informed her manager, defendant-appellee Ellen Bova, that she would need time off to undergo a colonoscopy. Three days later, North Shore cashiered the plaintiff. In doing so, it cited performance-related reasons.

-2-

The plaintiff repaired to a Massachusetts state court, contending that the defendants had orchestrated her firing in retaliation for her hemorrhoids-induced absences in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. She added a medley of state-law claims. Citing the presence of a federal question, the defendants removed the case to the federal district court. See 28 U.S.C. §§ 1331, 1441.

After a period of pretrial discovery and the dismissal of some of the plaintiff's causes of action, the defendants moved for summary judgment on, pertinently, the FMLA claim.[1] They argued, among other things, that the plaintiff's inability to show that she suffered a "serious health condition" as defined by the FMLA and its accompanying regulations, see 29 U.S.C. § 2611(11); 29 C.F.R. §§ 825.113-.115, doomed her FMLA claim. The plaintiff opposed the motion, but the district court deemed the "no serious health condition" argument convincing and granted summary judgment. See Nansamba, 2012 WL 1856950, at *5. The court declined to exercise supplemental jurisdiction over the plaintiff's remaining state-law claim. See id.; see also 28 U.S.C. § 1367(c). Final judgment entered on May 24.

On May 29, the plaintiff moved for reconsideration, alleging that certain medical records — her own — constituted newly

---

[1] The defendants filed their summary judgment motion on February 15, 2012. Unless otherwise indicated, all dates mentioned hereafter refer to the year 2012.

-3-

discovered evidence showing that her hemorrhoids satisfied the FMLA's definition of a "serious health condition."[2] The saga of these records is of central importance to what next transpired.

During pretrial discovery, the parties jockeyed over the production of the plaintiff's complete medical file. She first produced a set of her medical records on December 13, 2011, responding to a discovery request. The defendants complained that the release form used to obtain those records requested only a "medical record abstract," not the plaintiff's complete medical file. Four days after this complaint was made, the plaintiff executed and delivered a new release form. Although this form was broader in scope, it still excepted the release of photographs, radiation reports, x-ray reports, and "personal information not related to treatment."

The new release form instructed that the records be sent directly to defense counsel. But those additional records, when received, did not assuage the defendants' concerns. On February 3, defense counsel e-mailed plaintiff's counsel lamenting that:

> We have received part of [the plaintiff's] medical record — but, once again, only part of it.
>
> You will see that — once again — [the plaintiff] has signed the medical release, but

---

[2] We assume for argument's sake that the plaintiff's full medical file would suffice to make out a genuine issue of material fact about whether she suffered from a "serious health condition." The defendants dispute this conclusion.

specifically instructed the physician not to provide the entire medical file.

Attached to this e-mail were the records that defense counsel had received pursuant to the second release form.

The plaintiff's lawyers did not bother to open or examine the attachment. On February 14, however, the plaintiff executed an unrestricted release form. Using this third release form, the defendants garnered more records in April. What they received, however, did not differ in any meaningful way from what they previously had sent to plaintiff's counsel in February.

This brings us back to the plaintiff's motion for reconsideration of the summary judgment order. In that motion, the plaintiff — not realizing that the records produced in April (after the summary judgment motion had been briefed but before it was decided) were materially identical to those attached to the February 3 e-mail — argued that the April records constituted newly discovered evidence. The district court demurred, observing that virtually all the records on which the motion relied had been e-mailed to plaintiff's counsel on February 3 and had languished in their possession since that time.

The plaintiff did not take a timely appeal from either the entry of summary judgment or the denial of her motion for reconsideration. On November 13, however, she moved for relief from the judgment. In that motion, she characterized her lawyers' failure to introduce the medical records contained in the

attachment to the February 3 e-mail as the product of either excusable neglect or fraud.  See Fed. R. Civ. P. 60(b)(1), (3). Reiterating that "no justifiable reason" had emerged to explain the plaintiff's delay in obtaining her own medical records, the district court denied the motion.  This appeal followed.

## II.  ANALYSIS

We preface our analysis with an inventory of what is properly before us and what is not.  Although the plaintiff endeavors to challenge the district court's order for summary judgment, that challenge is out of time.  The plaintiff did not file her notice of appeal until February 22, 2013 — more than four months after the district court denied her motion for reconsideration of the summary judgment order.  Although the appeal period is tolled upon the filing of a timely motion for reconsideration,[3] an order disposing of the motion restarts the appeal clock.  See Young v. Gordon, 330 F.3d 76, 80 (1st Cir. 2003).  Thus, the plaintiff's notice of appeal was untimely as to both the entry of summary judgment and the denial of reconsideration.  See Fed. R. App. P. 4(a)(1)(A) (stipulating thirty-day appeal period).

The plaintiff's motion for relief from judgment, filed outside the thirty-day appeal period, did not resurrect her expired

_____

[3] For this purpose, a motion for reconsideration is timely only if it is filed within twenty-eight days of the entry of the order to be reconsidered.  See Fed. R. Civ. P. 59(e).

right of appeal. See de la Torre v. Cont'l Ins. Co., 15 F.3d 12, 13 n.2 (1st Cir. 1994). As we have explained, "an appeal from the denial of a Rule 60(b) motion is not a surrogate for a seasonable appeal of the underlying judgment." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).

Our inquiry, then, is confined to the supportability of the district court's denial of the motion for relief from judgment. Familiar principles guide this inquiry: "relief under Rule 60(b) is extraordinary in nature and [] motions invoking that rule should be granted sparingly." Id. Finality is an important element in the judicial process, and setting aside a final judgment requires more than the frenzied brandishing of a cardboard sword. Such a motion must satisfy a special set of criteria; it is not enough merely to cast doubt on the soundness of the underlying judgment. See Fisher v. Kadant, Inc., 589 F.3d 505, 512 (1st Cir. 2009).

The criteria for Rule 60(b) relief are well-established. A party seeking such relief must demonstrate "that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted." Id. (internal quotation mark omitted). Because the district court is best positioned to examine

-7-

these criteria, we review an order granting or denying a Rule 60(b) motion solely for abuse of discretion. See Karak, 288 F.3d at 19.

Against this backdrop, we turn to the substance of the present appeal. Rule 60(b) plots six different paths, each of which may lead to relief from judgment. See Fed. R. Civ. P. 60(b)(1)-(6). The plaintiff tries to traverse two of these paths: clause (1) and clause (3).[4] As to both paths, the defendants concede (at least implicitly) that the motion for relief from judgment was filed within a reasonable time and, thus, satisfies Rule 60(b)'s temporal requirement. Our focus, therefore, is on the existence vel non of exceptional circumstances warranting extraordinary relief.[5] See Fisher, 589 F.3d at 512.

## A. Rule 60(b)(1).

We start with the plaintiff's assertion that Rule 60(b)(1), which permits a court to set aside a judgment in cases of "mistake, inadvertence, surprise, or excusable neglect," applies here. The plaintiff trains her sights on the "excusable neglect" prong. In her view, the excusable neglect that occurred here

---

[4] In her brief, the plaintiff also mentions clause (6) but offers no developed argumentation supporting an application of that clause. We therefore treat any such argument as waived. See de la Torre, 15 F.3d at 15 n.5; United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[5] Because we uphold the district court's determination that the plaintiff has failed to show exceptional circumstances sufficient to warrant relief from judgment, we need not consider either the merits of the plaintiff's FMLA claim or the degree of prejudice that setting aside the judgment might entail.

comprises an exceptional circumstance that should justify relief from judgment.

Neglect is not the issue. The plaintiff admits that her lawyers failed to open the February 3 e-mail attachment containing her medical records. She likewise admits that they failed to introduce any of those records in opposition to the summary judgment motion. This is neglect on steroids, and the fact that the neglect was the attorneys' rather than the client's is irrelevant. Attorneys act for their clients, and the neglect of an attorney acting within the scope of his or her authority is attributable to the client. See Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992) (rejecting argument that attorney's sins should not be visited upon client); Damiani v. R.I. Hosp., 704 F.2d 12, 16 (1st Cir. 1983) (same).

Even so, Rule 60(b)(1) requires more than a showing of neglect simpliciter; it requires a further showing that the neglect is excusable. The plaintiff labors to make this further showing by suggesting that the wording of defense counsel's February 3 e-mail lulled her legal team into inaction. That suggestion exalts hope over reason.

The Supreme Court has described "excusable neglect" as encompassing "inadvertence, mistake, or carelessness, as well as [] intervening circumstances beyond the party's control." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388

(1993); see Aquiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 28 (1st Cir. 2006). The "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395. Within the constellation of relevant factors, the most important is the reason for the particular oversight. See Dimmitt v. Ockenfels, 407 F.3d 21, 24 (1st Cir. 2005). "At a bare minimum, a party who seeks relief from judgment on the basis of excusable neglect must offer a convincing explanation as to why the neglect was excusable." Cintrón-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 527 (1st Cir. 2002). This is especially true when the question of excusable neglect arises out of a party's delay in presenting available evidence to the court. See, e.g., Barrett v. Lombardi, 239 F.3d 23, 28-29 (1st Cir. 2001); Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 29-30 (1st Cir. 1980).

In the case at hand, the plaintiff asseverates that the defendants' e-mailed February 3 statement that they had "received part of [the plaintiff's] medical record — but, once again, only part of it" led her lawyers to believe that the records attached to that e-mail were the same records that the plaintiff originally had produced (and therefore not worthy of examination). The district court found this explanation unpersuasive. So do we.

The text of the February 3 e-mail does not bear out the interpretation that the plaintiff seeks to impress upon it; it is

-10-

entirely silent on the issue of whether the defendants, in response to the submission of the second release form, had received anything more than what the plaintiff had originally produced. To bridge this gap, the plaintiff relies on her lawyers' subjective understanding that the two productions were identical. This reliance is mislaid: unilateral assumptions about the meaning of correspondence, without more, are insufficient to excuse neglect. See Easley v. Kirmsee, 382 F.3d 693, 697-98 (7th Cir. 2004).

Here, there is no "more." Indeed, we are puzzled about how the plaintiff's lawyers could reasonably have arrived at their professed understanding of the February 3 e-mail. Fairly read, nothing about either the contents or the context of that e-mail provides even the slightest justification for the lawyers' failure to open the attachment. The e-mail specifically noted: "You will see that — once again — [the plaintiff] has signed the medical release, but specifically instructed the physician not to provide the entire medical file." This appears to be an invitation to examine the contents of the attachment rather than an exhortation to shun such an examination.

Two additional facts cut sharply against the plaintiff's position. First, her attorneys never sought clarification of the February 3 e-mail that she now suggests was ambiguous. Second — and more damning — the plaintiff offers no plausible rationale for bringing an FMLA claim, yet not taking the initiative to obtain her

-11-

complete medical record in order to prosecute that claim. One would have expected that the lawyers would have obtained their client's complete medical file before bringing an FMLA action, cf. Fed. R. Civ. P. 11(b) (requiring good-faith basis for the allegations in a pleading); or at any rate would have used the roughly seven months that elapsed between the commencement of the action and the filing of the summary judgment opposition to procure that file.

To say more on this point would be supererogatory. Given the plaintiff's failure to offer a convincing explanation for the patent lack of diligence exhibited here, the district court acted well within the broad compass of its discretion in denying the motion for relief from judgment under Rule 60(b)(1).

## B. **Rule 60(b)(3).**

The plaintiff's remaining claim implicates Rule 60(b)(3), which permits a court to relieve a party from a judgment upon a showing that the adverse party has committed "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct." There are two prerequisites to such relief. In the first place, the moving party must prove the adverse party's culpable misconduct by clear and convincing evidence. See Anderson v. Cryovac, Inc., 862 F.2d 910, 926 (1st Cir. 1988). In the second place, the moving party must show by a preponderance of the evidence that the culpable misconduct "substantially interfered

-12-

with [her] ability fully and fairly to prepare for, and proceed [to judgment]." Id. The moving party must carry the devoir of persuasion as to each of these prerequisites. See Karak, 288 F.3d at 21.

In framing this claim, the plaintiff starts with the defendants' argument, made in support of their summary judgment motion, that her hemorrhoids did not satisfy the FMLA's definition of a "serious health condition." She then asserts that this argument was fraudulent because defense counsel must have read the medical records attached to the February 3 e-mail (even though her counsel did not) and realized that their argument was belied by those records. With this patchwork foundation in place, she posits that the argument was knowingly untrue.

The plaintiff's thesis is a house of cards. The office of a summary judgment motion is to test the sufficiency of the opposing party's evidence. Thus, a party moving for summary judgment is free to assert that the record before the court fails to make out a trialworthy question of material fact as to a dispositive issue. Once the movant takes such a position, it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions. See Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004). The plaintiff's Rule 60(b)(3) argument conflates and confuses these roles.

What happened here is a mundane example of the summary judgment process at work.  The defendants, through their summary judgment papers, asserted that the evidence of record did not show a serious health condition.  The plaintiff was free to proffer facts sufficient to counter this assertion.  She failed to do so (even though such facts were readily available to her).  That the defendants did not scour the discovery materials for facts supporting the plaintiff's position is not a badge of fraud but, rather, a prudent refusal to make their adversary's case for her.  That is simply good lawyering, and we reject the plaintiff's brash attempt to "transmogrify advocacy into misrepresentation." Rodriquez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 3 n.3 (1st Cir. 1989).

The same reasoning undermines the plaintiff's reliance on certain statements made by defense counsel at the summary judgment hearing.  There, defense counsel stated that the plaintiff "received no medical treatment" since her colonoscopy and had "received no medication" for her hemorrhoids.  These statements are properly viewed as counsel's characterization of the summary judgment record.[6]  So viewed, the statements were accurate.  After all, the plaintiff testified on deposition that she had neither

---

[6] Context makes this meaning pellucid: defense counsel explicitly tied his recitation of facts to the record evidence.

-14-

received medical treatment since her colonoscopy nor taken any medication for her hemorrhoids.

If more were needed — and we do not think that it is — we explained in <u>Karak</u> that "[w]hen a party is capable of fully and fairly preparing and presenting his case notwithstanding the adverse party's arguable misconduct, the trial court is free to deny relief under Rule 60(b)(3)." 288 F.3d at 21-22. Here, the plaintiff has made no showing that any misconduct of the defendants' counsel inhibited her from fully and fairly preparing her case. It is transparently clear that, regardless of what defense counsel may or may not have done, the plaintiff had at her fingertips the records that would have laid bare what she now asserts to be the true facts. As in <u>Karak</u>, her pursuit of the truth was not "hampered by anything except h[er] own reluctance to undertake an assiduous investigation." <u>Id.</u> at 22.

The short of it is that the plaintiff, through her attorneys, had <u>in her possession</u> prior to crafting her opposition to the summary judgment motion all the medical records that she now claims should have been submitted to the district court. The failure of the plaintiff and her attorneys to examine and proffer those records is no one's fault but their own. Their effort to pass the buck is a technique as old as time, <u>see</u>, <u>e.g.</u>, Genesis 3:11-13, but its efficacy as a basis for relief has not improved with age.

That ends this aspect of the matter. Simply put, the record does not reveal either fraud or any unfair impediment to the plaintiff's ability fully and fairly to defend against the summary judgment motion. Consequently, the district court did not abuse its discretion in denying the plaintiff's motion for relief under Rule 60(b)(3). See Ojeda-Toro v. Rivera-Mendez, 853 F.2d 25, 29 (1st Cir. 1988) (explaining "that a party may not prevail on a Rule 60(b)(3) motion on the basis of fraud where he or she has access to disputed information . . . at the time of the alleged misconduct").

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we uphold the district court's denial of the plaintiff's motion for relief from judgment.


**Affirmed**.