# United States Court of Appeals

## For the First Circuit

Nos. 19-1990, 21-1184

UNIBANK FOR SAVINGS,

Plaintiff, Appellee,

v.

999 PRIVATE JET, LLC.; ELINA SARGSYAN; EDGAR SARGSYAN,

Defendants, Appellees.

_____

SBK HOLDINGS USA, INC.

Intervenor, Appellant.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

_____

Before

Lynch, Kayatta, and Gelpí,
Circuit Judges.

_____

Mark J. Geragos, with whom Geragos & Geragos APC, was on brief, for appellant.
Eric Magnuson, with whom Gabriel Rossman and Nutter McClennen & Fish, LLP were on brief, for appellee.

_____

April 11, 2022

_____

**GELPÍ**, **Circuit Judge**. Unibank for Savings ("Unibank") originally brought this action against Edgar Sargsyan ("Sargsyan"), his spouse Elina Sargsyan, and 999 Private Jet, LLC ("999 Private Jet") for breach of their obligations under a promissory note secured by a Gulfstream aircraft. After the district court granted Unibank's unopposed motion for a preliminary injunction to repossess the aircraft, SBK Holdings USA, Inc. ("SBK") intervened, asserting an alleged superior security interest in said aircraft. The district court entered summary judgment against SBK and subsequently denied its motion to set aside the judgment. SBK appeals both rulings. We affirm.

I. Background[1]

SBK is an investment company specializing in real and personal property. Sargsyan was its president and legal counsel from December 2013 until July 2016, when he was terminated for breaching his fiduciary duties. Sargsyan's relevant actions date back to 2015, when SBK was negotiating the purchase of a 1997 Gulfstream aircraft, Model G IV-SP, Serial No. 1315, FAA Registration No. N999SE (the "aircraft"). Sargsyan was required to report all current and potential investments and properties, as well as compile a status account of all SBK transactions. Additionally,

---

[1] On summary judgment review, we examine the evidence of record in the light most favorable to the non-moving party, here SBK. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).

he was required to ensure that title to all property acquired by SBK was held in its name. Sargsyan oversaw the purchase of the aircraft with SBK funds, but as the negotiations for the same took place, he created a new company independent from SBK. Instead of transferring the aircraft to SBK, he registered its title in the name of his newly created corporation, Regdalin Aviation LLC ("Regdalin"). Around February 2016, Sargsyan, on behalf of Regdalin, obtained a loan from Huntington National Bank (the "Huntington loan" and "Huntington Bank"), which perfected a security interest in the aircraft.

In September 2016, SBK discovered that the aircraft's title was registered to Regdalin rather than to itself. As a result, in December 2016, SBK's Chief Executive Officer ("CEO"), Dan McDyre, requested the Federal Aviation Administration ("FAA") to place a preliminary lien on the aircraft in the amount of $6,227,250. The FAA maintained the claim-of-lien letter in a suspense file.

On February 3, 2017, SBK brought an action in Los Angeles Superior Court against Sargsyan, Regdalin, and others seeking damages for breach of fiduciary duties, fraud, and embezzlement.[2] After the California case had commenced, Sargsyan created yet another new company, 999 Private Jet, and transferred the ownership of the aircraft from Regdalin thereto. In May 2017, Sargsyan,

---

[2] This action is currently ongoing.

Elina Sargsyan, and 999 Private Jet issued a $4,348,334.01 promissory note payable to Unibank in order to refinance the Huntington loan. Unibank, in turn, accepted the aircraft as a security interest on the note and, on May 4, 2017, disbursed $4,348,334.01 to Huntington Bank to discharge the aircraft lien. On May 9, 2017, Unibank registered its security interest. By June 2018, Sargsyan, his spouse, and 999 Private Jet defaulted on their obligations towards Unibank.

A. Procedural History

In August 2018, Unibank brought an action in the United States District Court for the District of Massachusetts against Sargsyan, his spouse, and 999 Private Jet, based on their nonpayment of the May 2017 promissory note. On September 7, 2018, the district court found that Unibank had a perfected secured interest in the aircraft, and thus granted Unibank's unopposed motion for a preliminary injunction authorizing it to repossess the aircraft. The court further entered default judgment on September 14, 2018 in favor of Unibank. Since then, Unibank has been in possession of the aircraft.

On October 31, 2018, SBK moved to intervene, claiming ownership of the aircraft by virtue of an alleged senior security interest in the same.[3] The district court allowed SBK's

---

[3] In its motion to intervene SBK informed of its pending California state court action against Sargsyan and others.

intervention. Unibank subsequently moved for summary judgment as to SBK, arguing that it, rather than SBK, had the senior perfected interest in the aircraft. On September 12, 2019, the district court granted Unibank's motion. SBK next filed a motion on November 12, 2020 under Fed. R. Civ. P. 60(b) to set aside the judgment and conduct discovery, based on Sargsyan's criminal felony plea in the United States District Court for the Central District of California for conspiracy to commit identity theft and fraud against several national and multinational banks.[4] The district court determined that Sargsyan's criminal case was unrelated to the controversy before it, and thus, denied SBK's motion. SBK timely appealed.

## II. Standard of Review

"We review an order granting summary judgment de novo." Perea v. Ed. Cultural, Inc., 13 F.4th 43, 50 (1st Cir. 2021) (quoting Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018)). We will affirm the entry of summary judgment only if the record discloses no genuine dispute of material fact and demonstrates that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). A fact is material when it has the potential to change a case's outcome. See Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017). "A dispute is 'genuine'

---

[4] The case is United States v. Edgar Sargsyan, No. 2:20-cr-00190 (C.D. Ca. Apr. 27, 2020).

- 5 -

when 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018) (quoting Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)). We now turn to the record before us. We first address the issue of FAA registration, examining whether Unibank had record or actual notice of SBK's claim to the aircraft. We then discuss the state law issues as to the validity of Unibank's interest in the aircraft. Lastly, we examine SBK's Rule 60(b) motion.

## III. Discussion

### A. FAA Registration

We begin with the federal-law issue of the interpretation of 49 U.S.C. §§ 44107-44108, which governs the recordation and validity of conveyances, leases, and security interests for civil aircraft in the United States. As the Supreme Court stated concerning the predecessor statute[5] in Philko Aviation, Inc. v. Shacket, 462 U.S. 406, 413 (1983), "[a]lthough state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law." Aiming for a clear and uniform registration system for civil aircraft, Congress codified the procedure for perfecting an

---

[5] Philko Aviation addresses section 503(c) of the Federal Aviation Act of 1958, 49 U.S.C. § 1403(c), which effectively mirrors the provision contained in 49 U.S.C. § 44108(a).

interest in aircraft, requiring interest holders to duly record any such interest with the FAA.  49 U.S.C. §§ 44107-44108; see also Philko Aviation, 462 U.S. at 411.  Congress's purpose was to give uniformity to the recordation of titles "so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft."  Philko Aviation, 462 U.S. at 411 (quoting To Create a Civil Aeronautics Authority:  Hearing on H.R. 9738 Before the H. Comm. on Interstate and Foreign Com., 75th Cong. 407 (1938) (statement of F. Fagg, Director of Air Commerce, Department of Commerce)).  Therefore, unless the interest is recorded with the FAA, the conveyance is valid only against "(1) the person making the conveyance, lease, or instrument; (2) that person's heirs and devisees; and (3) a person having actual notice of the conveyance, lease, or instrument."  49 U.S.C. § 44108(a).

The FAA outlines the requirements for recording an interest in aircraft, as delegated to the agency under 49 U.S.C. § 44107(a), in its Aircraft Registration and Recordation Processes guide.  See U.S. Dep't of Transp., Fed. Aviation Admin., Aircraft Registration and Recordation Processes (2018) ("Aircraft Registration and Recordation Guide").  We take judicial notice of the Aircraft Registration and Recordation guide, and SBK does not dispute that we should follow that guide.  See, e.g., Or. Nat. Desert Ass'n v.

<u>Bureau of Land Mgmt.</u>, 625 F.3d 1092, 1112 & n.14 (9th Cir. 2010) (taking judicial notice of agency handbook).[6]

1. Record Notice

SBK admits that it presented the district court with only two pieces of evidence in support of its claim of recordation. The first was a declaration from its CEO, Dan McDyre, asserting that

> [i]n December 2016, [he] contacted the FAA by letter (the 'Aircraft Claim of Lien Letter') and requested a lien in the amount of $6,227,250 be placed on the Aircraft (which, at the time, had tail number N580KF). On or about December 30, 2016, the FAA Aircraft Registration Bureau filed the Aircraft Claim of Lien Letter.

---

[6] Per the guide, a security conveyance, such as using the aircraft as collateral for a loan, <u>see</u> Aircraft Registration and Recordation Guide § 4.1.1, is eligible for recording where: (a) "[i]t affects aircraft registered under 49 U.S.C. 44103"; (b) "[i]t describes the aircraft by name of manufacturer, model, manufacturer's serial number, and U.S. registration number or in sufficient detail to identify it"; (c) "[i]t shows [the] legal name of the debtor"; (d) "[i]t is an original, a duplicate original, or a certified true copy"; (e) "[i]t shows title of the signer, if appropriate"; (f) "[i]t is (1) executed by the registered owner, (2) executed by the owner of record, (3) accompanied by the debtor's evidence of ownership, (4) accompanied by an accommodation agreement (hypothecation), or (5) signed by the lessee and the described lease agreement qualifies as a conditional sales contract and is either previously recorded or accompanies the security agreement, in which case the lease agreement is recorded first"; (g) "[i]t (1) contains sufficient words to convey a security interest in the aircraft or a security interest in the leasehold interest, (2) includes [a] sales and title retention clause for a contract of conditional sale, or (3) contains a purchase option which qualifies a lease as a conditional sales contract or statement that the bailee becomes the owner upon compliance with the terms of a bailment lease"; and (h) "[i]t is accompanied by the recording fee." <u>Id.</u> § 4.1.8 (emphases omitted).

- 8 -

The FAA filed said claim-of-lien letter in a suspense file. The second was a purported title-search document that referred to the claim-of-lien letter given to the FAA. The aircraft title-search was not conducted by the FAA but rather a third party. No letter was attached to the title-search document submission to the district court.

For a number of reasons, SBK's submissions do not satisfy its burden of showing that its claim-of-lien letter met the recordation requirements to perfect a security interest under Philko Aviation. 462 U.S. at 413. SBK never presented the claim-of-lien letter to the district court. Further, according to the Aircraft Registration and Recordation Guide, any letter that remains in a FAA suspense file holds unrecorded status, and thus is invalid until all recording requirements are met. See Aircraft Registration and Recordation Guide §§ 4.6.2, 5.12 (2018); see also In Re Tomlinson, 347 B.R. 639, 645 (Bankr. E.D. Tenn. 2006) ("The Supreme Court has held that the statute invalidates unrecorded title transfers, not just unrecorded title instruments, so that a claimant cannot 'prevail against an innocent third party by establishing his title without relying on an instrument.'") (quoting Philko Aviation, 462 U.S. at 409). And even more significantly, SBK never put into evidence a "Notice of Recordation -- Aircraft Security Conveyance," which under the FAA guide, it

would have received had the interest been recorded. See Aircraft Registration and Recordation Guide § 4.1.22 ("When a security conveyance is recorded, a Notice of Recordation -- Aircraft Security Conveyance is sent to the secured party.").

2. Actual Notice

Under 49 U.S.C. § 44108(a), SBK can overcome its failure to record if it can show that Unibank received actual notice of SBK's interest in the aircraft before Unibank issued its loan. SBK alleges that Unibank had actual notice of its interest in the aircraft because phone calls were held between SBK and Unibank employees that gave the latter notice of SBK's interest in the aircraft. On May 12, 2017 CEO McDyre called Unibank's call center and informed Unibank about the lawsuit against Sargsyan in the Los Angeles Superior Court. However, this information was provided to Unibank eight days after the bank had disbursed over $4.3 million on May 4, 2017 to 999 Private Jet to pay the Huntington loan and obtain full discharge of Huntington Bank's lien on the aircraft. Also, by May 9, 2017, Unibank had already registered its security interest in the aircraft with the International Registry. By the time McDyre contacted Unibank's call center, the transaction was already completed. Thus, SBK's argument that Unibank had actual knowledge before engaging in the transaction fails.[7]

_____

[7] SBK also points to another phone call by an unknown employee of it to Unibank. However, the evidence of said call is not

- 10 -

SBK further claims that the absence of the aircraft's logbook was sufficient to put Unibank on inquiry notice of its interest in the aircraft. We disagree. That argument is at odds with the criteria articulated by Congress in 49 U.S.C. § 44108(a), which unambiguously establishes that actual notice, rather than inquiry notice, is required for a conveyance to be valid. We thus reject SBK's argument because it falls short of the required actual notice standard. Because SBK has not met its burden of presenting sufficient evidence of recordation or actual notice to Unibank, SBK does not have a perfected security interest.

B. Validity of Unibank's Security Interest

SBK next posits that Unibank lacks a valid security interest in the aircraft altogether, arguing that 999 Private Jet fraudulently obtained title to the aircraft and thus had no rights to convey to Unibank. As such, SBK asserts that its interest-- even if unperfected--trumps Unibank's valid interest, which as discussed in pages 6-11, infra, fully complied with federal law and regulations. Massachusetts law dictates otherwise because even if 999 Private Jet procured its interest by fraud, it retained at least voidable title and thus could transfer good title to

---

substantiated by the record. There were no phone records, no employee identification, and no date or time of the call. SBK has not provided any evidence to show that this call, which may or may not have occurred, demonstrated actual notice.

Unibank as a good faith purchaser for value.  See Mass. Gen. Laws ch. 106, § 2-403(1)(d).

The perfection and registration of personal property is governed by state law, to wit, the Uniform Commercial Code ("UCC"). See Mass. Gen. Laws ch. 106, § 9-301; 49 U.S.C. § 44108(c)(1); see also Stern v. Marshall, 564 U.S. 462, 495 (2011) ("[P]roperty interests are created and defined by state law." (alteration in original) (quoting Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451 (2007))).  However, as previously discussed, aircraft must be federally recorded in order to obtain "whatever priority to which they are entitled under state law." Philko Aviation, 462 U.S. at 413.  Massachusetts law[8] provides that a party must enjoy rights in a particular property to grant a valid security interest in the same.  Mass. Gen. Laws ch. 106, § 9-203 ("[A] security interest is enforceable against the debtor and third parties with respect to the collateral only if . . . [inter alia,] the debtor has rights in the collateral." (emphasis added)); see also Baystate Drywall, Inc. v. Chicopee Sav. Bank, 429 N.E.2d 1138, 1140 (Mass. 1982).  The UCC allows a creditor to perfect its security interest, thereby achieving priority over all other unperfected interests in the property.  See Mass. Gen. Laws ch. 106, § 9-322(2).

---

[8] The parties to this appeal do not dispute that Massachusetts law governs resolution of this issue.

Massachusetts law also delineates the power to transfer title to good faith purchasers. "A person with voidable title has power to transfer good title to a good faith purchaser for value." Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 96 (1st Cir. 1993) (emphasis omitted) (quoting Mass. Gen. Laws ch. 106, § 2-403(1)); see also Dion v. Silver City Dodge, Inc., 495 N.E.2d 274, 275 (Mass. 1986); Mass. Gen. Laws ch. 106, § 2-403(1)(d). A good faith purchaser is one who purchases assets unaware of adverse claims. Oakville Dev. Corp. v. F.D.I.C., 986 F.2d 611, 614 (1st Cir. 1993); see also Dion, 495 N.E.2d at 275. For purposes of determining whether one qualifies as a good faith purchaser, the word "purchaser" includes parties who obtain a security interest in the property. Mass. Gen. Laws ch. 106, § 1-201(29)-(30).

Unibank obtained its interest in the aircraft as collateral from 999 Private Jet, which in turn had acquired ownership of the aircraft from Regdalin. Previously, Regdalin had changed the registration and tail number of the aircraft and used it as collateral in its transaction with Huntington Bank. SBK does not dispute Huntington Bank's perfected security interest in the aircraft. Rather, without any due elaboration, SBK contests Unibank's security interest in the aircraft. Massachusetts law grants protection to Unibank as a good faith purchaser despite 999 Private Jet's dubious prior acquisition of the loan with the

aircraft as collateral.  See Mass. Gen. Laws ch. 106, § 2-403(1)(d).  Unibank was unaware of 999 Private Jet's fraudulent scheme.  Accordingly, SBK's claim fails.  Because Unibank qualifies as a good faith purchaser for value, it has a perfected security interest in the aircraft, while SBK does not.[9]

C. Rule 60(b)

SBK lastly argues that the district court erred in denying its Rule 60(b) motion to set aside judgment and reopen discovery.  SBK claims that the grant of summary judgment was improvident because it did not have "the benefit of discovery to fully develop evidence."  SBK further advanced that Sargsyan's plea agreement in his 2020 criminal fraud case, involving major national and international banks, would likely shed light on his actions with Unibank.  Before us, SBK asserts that discovery would help determine whether Unibank acted in good faith regarding SBK's alleged ownership of and rights to the aircraft.  SBK's claim is unavailing.

Rule 60(b) provides several grounds for relief from a final judgment.  Relevant to our analysis, it permits a final judgment to be set aside based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to

---

[9] Because we hold that Unibank has a perfected security interest in the aircraft and SBK does not, we find it unnecessary to reach the issue of equitable subrogation.

move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). It also allows a final judgement to be set aside based upon an opposing party's "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct." Fed. R. Civ. P. 60(b)(3). Relief under Rule 60(b) "is extraordinary in nature" and, thus, "motions invoking that rule should be granted sparingly." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002). We review the denial of a motion brought under Rule 60(b) for abuse of discretion. Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 527 (1st Cir. 2002). As such, when considering Rule 60(b) motions, we give deference to the district court's "first-hand knowledge" of the facts of the case. Id. (quoting Karak, 288 F.3d at 19).

We note, as did the district court, that "neither the Information nor the Plea Agreement name Unibank, SBK, the FAA, the aircraft, or the promissory note and aircraft security agreement at issue in this case." We further note that Sargsyan's conviction is entirely unrelated to the present case.

Moreover, SBK has failed to demonstrate that the fraud or misrepresentation prevented it from a "full and fair preparation of [its] case." Karak, 288 F.3d at 21 (quoting Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988)); see also Fed. R. Civ. P. 60(b)(3). Such misconduct must occur "during the course" of the litigation, which is not the case here. Roger

- 15 -

Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 134 (1st Cir. 2005).  Accordingly, we discern no abuse of discretion by the district court in denying the Rule 60(b) motion.

IV. Conclusion

We need go no further.  After reviewing the record in the light most favorable to SBK, the district court's order granting summary judgment and subsequently denying SBK's Rule 60(b) motion is

**AFFIRMED**